DUNSEITH PUBLIC SCHOOL DISTRICT NO. 1 OF ROLETTE COUNTY, Petitioner and Appellant,

v.

STATE BOARD OF PUBLIC SCHOOL EDUCATION OF the STATE OF NORTH DAKOTA, Respondent and Appellee.

Civ. No. 11336.

Supreme Court of North Dakota.

March 2, 1987.

Neil W. Fleming, of Fleming, DuBois & Trenbeath, Cavalier, for petitioner and appellant.

Michael J. Geiermann, Asst. Atty. Gen., Bismarck, for respondent and appellee.

VANDE WALLE, Justice.

Dunseith Public School District No. 1 of Rolette County appealed a decision of the district court of Rolette County affirming the decision of the State Board of Public School Education (State Board) approving the detachment of a certain territory from the Dunseith school district and its attachment to Bottineau Public School District

No. 1 of Bottineau and Rolette counties. The dispositive issue on this appeal concerns the failure of the State Board to prepare findings of fact required by Section 15–27.2–04, N.D.C.C. We reverse the judgment of the district court and remand with instructions to enter an order directing the State Board to prepare findings in accordance with the requirements of the statute.

A petition was filed with the Bottineau and Rolette county committees for the reorganization of school districts (County Committees) requesting that a part of the Dunseith school district be annexed to the Bottineau school district. The property which was sought to be annexed is located in Rolette County.

Because the proposed annexation involved school districts situated in more than one county, a joint meeting of the Bottineau and Rolette county committees for school reorganization was held to consider the petition. See Section 15–27.2–04(7), N.D.C.C.[1] The Bottineau county committee approved the petition and the Rolette county committee disapproved the petition. As provided by statute [Sec. 15–27.2–04(7)], the petition was then submitted to the State Board.

At the hearing before the State Board, proponents of the annexation testified that 95 out of 102 people in the area sought to be annexed had signed the petition. Opponents claimed that many of the people who signed the petition did not have any children attending school, and had signed the petition merely to pay less taxes. The opponents voiced their concern that other people might try to do the same thing in the future if the present petition were approved.

Testimony was also given regarding the issue of discipline at the Dunseith School. Proponents cited a five-year-old report

1. Unless otherwise indicated, references are to the statutes contained in the recodification of the statutes involving the annexation, reorganization, and dissolution of school districts in 1985. See 1985 N.D.Sess.Laws ch. 209. Although the annexation petition at issue was filed in March 1984, the statutes then in effect were, for the purposes of this opinion, substantially similar to those contained in the 1985 recodification. See, e.g., Section 15–53.1–06, N.D.C.C., prior to its repeal in 1985.

which stated that there was a lack of discipline and control at Dunseith. They also claimed that the problems, although possibly improved, were still present and prevented the students from receiving a proper education. Opponents pointed out that the study was five years old, that a full-time disciplinarian had been hired, and that conditions had dramatically improved.

Testimony was also given regarding the number of students attending the schools. Proponents of the petition claimed that a large percentage of the students living in the Dunseith district were going to schools other than at Dunseith. They contended that this showed a large number of people felt Dunseith was not a good place to send their children to school. However, the opponents claimed that the reason many students attended the other schools was tradition. They testified that parents or other relatives had attended the other schools and for that reason they sent their children there.

There was also testimony regarding the issue of transportation of the students. Proponents asserted that the time spent on the school buses was less when going to Bottineau than to Dunseith. They testified that all the roads to Bottineau were paved, and that if the petition were approved, very little rerouting of buses would be necessary. Opponents cited the fact that the students would have to travel many more miles, and thus spend more time on the school buses if the petition were approved. They contended this would be unsafe in view of the hazardous road conditions in the winter.

Testimony regarding the financial impact of the annexation was also presented. Proponents claimed that Dunseith would lose only 3½ percent of its funds if the petition were approved. They also testified that the students who would leave Dunseith were of various ages and grades. Thus no reduction in teaching staff would be necessary. Opponents cited the fact that the Dunseith district contains a large amount of nontaxable land and that if the petition were approved, Dunseith would lose one-sixth of its taxable land. They also testified that if the petition were approved the per-pupil disparity between Bottineau and Dunseith would increase by $780.

Testimony and evidence were presented regarding certain standardized test results from students of both schools. Although the results showed higher scores for the Bottineau students, the validity of these tests was questioned. Testimony indicated that the teacher turnover rate in Dunseith, although markedly improved over the past five years, was still significantly higher than in Bottineau. The student dropout rate was still over 50 percent in Dunseith. The opponents stressed that the information was from a five-year-old study, and that a dramatic improvement had been made in Dunseith regarding educational opportunities and the methods used in teaching, including discipline.

Proponents also testified that they could not afford to continue paying taxes to Dunseith as well as tuition to Bottineau. The opponents claimed that if this petition is granted, other people will want to detach their property from the Dunseith district and the district will not be able to continue operating.

The State Board is an administrative agency whose decisions concerning annexation, reorganization, and dissolution of school districts may be appealed to the district court as provided by law. See Sections 28–32–01 and 28–32–15, N.D.C.C. Administrative agencies are required to make findings of fact and conclusions of law. Sec. 28–32–13, N.D.C.C. We have said that the findings are adequate when they enable this court to understand the basis of the agency's decision. See, e.g., *Matter of Boschee*, 347 N.W.2d 331 (N.D. 1984).

The Legislature has enacted specific requirements with which the State Board in this instance must comply in receiving testimony and in preparing its findings following a hearing on an annexation petition. Subsections 3, 4, and 5 of Section 15–27.2–04, N.D.C.C., provide:

"3. At such hearing the committee shall consider testimony and documentary evidence with respect to any of the following factors:

"a. The value and amount of all school property and all bonded and other indebtedness of each school district affected by a change in boundaries.

"b. The amount of all outstanding indebtedness of each district and that which would constitute an equitable adjustment of all property, assets, debts, and liabilities among the districts involved.

"c. The taxable valuation of existing districts and the differences in such valuation which would accrue under the proposed annexation.

"d. The size, geographical features, and boundaries of the districts.

"e. The number of pupils attending school and the population of the districts.

"f. The location and condition of the districts' school buildings and their accessibility to affected pupils.

"g. The location and condition of roads, highways, and natural barriers within the respective districts.

"h. The school centers where children residing in the districts attend high school.

"i. Conditions affecting the welfare of the pupils in the land area the subject of the annexation petition.

"j. The boundaries of other governmental units and the location of private organizations in the territories of the respective districts.

"k. The educational needs of local communities in the involved districts.

"l. An objective in economizing in the use of transportation and administrative services.

"m. Projected future use of existing satisfactory school buildings, sites, and playfields in the involved districts.

"n. A reduction in disparities in per-pupil valuation between school districts and the objective of equalization of educational opportunities for pupils.

"o. Any other relevant factors which, in the judgment of the committee, are of importance.

"4. Following the committee's consideration of testimony and documentary evidence with respect to any of the factors listed in subsection 3, the committee shall make specific findings with reference to every one of those factors to which testimony or documentary evidence was directed.

"5. All proposed annexations must be given final approval by the state board following a hearing conducted by the board at which testimony and documentary evidence shall be considered with respect to any of the factors listed in subsection 3. The state board shall make specific findings with reference to every one of those factors to which testimony or documentary evidence was directed."

Thus both the county committee and the State Board must prepare specific findings with reference to every one of the factors listed in subsection 3 to which testimony or documentary evidence was directed. In view of all the testimony, we might expect extensive findings by the State Board. However, the only nonprocedural findings made by the Board are:

1. That the parents have paid tuition for five years.

2. That the parents will continue to send children to Bottineau regardless of the outcome of the request.

3. That Dunseith loses taxable valuation.

4. That Bottineau plan allows the annexation.

5. That Rolette County committee did not update the county reorganization plan as mandated by the State Board of Public School Education to be completed and filed with the Board by July 1, 1984.

6. That an adjustment of assets and liabilities was made by the county committee.

7. That greater educational opportunities are available to the students in Bottineau.

8. That two families that cannot afford to pay the tuition presented letters that they too would attend Bottineau if they could afford the tuition.[2]

These findings made by the State Board are not in compliance with the legislative intent so clearly expressed in Section 15–27.2–04. When testimony and documentary evidence concerning the factors therein are presented to the State Board, the Board must consider and "make specific findings with reference to every one of those factors to which testimony or documentary evidence was directed." Although, as we have noted, there was considerable testimony and documentary evidence adduced at the hearing before the State Board, the findings do not refer to much of it and those findings which were made are conclu-sory. Where, as in this case, the testimony is disputed, there is a need for more specific findings than might otherwise be warranted. Some of the factors to which testimony was directed are not discussed at all.[3]

Although we realize the State Board is composed of nonlawyers and we should not expect the detailed findings we might anticipate from a district court, we nevertheless expect more than token adherence to the specific legislative requirement imposed upon the Board in these matters. It is apparent to us that the sense of the Legislature was that the factors listed in the statute are important factors to be considered and weighed by the Board in reaching its decision. Some of those factors weigh on opposite sides of the issue of whether or not to approve the petition. By requiring that "specific findings" be made by the Board the Legislature has attempted to assure that the Board has, indeed, not

2. Although we are not concerned, on this appeal, with the findings of the county committee, we note that the Notice of Recommendation for Approval of Petition signed by the Bottineau county committee contained the following statements which we assume to be its findings of fact:

"1. There will be no division of assets or liabilities.

"2. The Petition is in compliance with the County Reorganization Plan.

"3. The Petitioners have shown a sincere interest in the education of their children by removing them from the Dunseith School and enrolling them in the Bottineau School and paying tuition and transportation costs.

"4. The educational needs of these children, according to testimony, is best provided by the Bottineau School District.

"5. The students have adapted to the Bottineau School System and it would create a hardship on these students to go back to Dunseith."

The same form of notice used by the Bottineau county committee was used by the Rolette county committee to disapprove the petition. That form indicates the reasons three of the five members of the committee voted to disapprove. One member was opposed "because it involved too much territory and it was against the Comprehensive Plan." Another opposed annexation "because no one established that there was a great difference in quality education between the two schools." Yet a third member opposed the petition "for fear Dunseith could not be salvaged and what to do with the remaining land." The remaining two members of the com-mittee, while voting to disapprove the petition, apparently expressed no reasons for doing so or agreed with the reasons set forth by the other three members.

3. As an example, the location of the school buildings and their accessibility to affected pupils and the location and condition of roads, highways, and natural barriers within the respective districts are two of the factors specified for special findings in Section 15–27.2–04(3), N.D.C.C.; although there was testimony that the students reside farther from the school at Bottineau than from the school at Dunseith, there was no reference to these factors in the findings of fact. We use this only as an example. We do not imply that these particular factors are or are not paramount in this particular case.

Because the State Board may believe that what we require is a recitation of the testimony in the findings, we hasten to note that we have told the district courts that a mere recitation of the evidence is not sufficient for the preparation of findings of fact. Rather, the reason for the rules and statutes requiring findings of fact is to enable the appellate court to understand the factual determination made by the trial court as the basis for its conclusions of law and judgment thereon. See, e.g., *Gross v. Sta-Rite Industries, Inc.,* 322 N.W.2d 679, 682 fn. 2 (N.D.1982). Although we have also indicated that if we understand from the findings the factual basis for the determination, the findings are adequately specified, in this instance, as we have noted, there is an additional requirement of specific findings placed upon the State Board by Section 15–27.2–04, N.D.C.C.

only *considered* but also *weighed* those factors in reaching its conclusions to approve or disapprove an annexation petition.

The respondents urge that the decision in *Matter of Annex. of Part of Donnybrook Pub. S.*, 365 N.W.2d 514 (N.D.1985), should control our decision in this instance. In that case we observed that findings must be made only as to factors to which testimony or evidence was directed. We said [365 N.W.2d at 524]:

> "As to several of the factors about which it is complained that no findings were made, there was no evidence or the facts were not disputed. No productive purpose would be served by remanding these petitions to the State Board for the purpose of making additional findings on matters about which there is no dispute. We discern no possibility that the making of additional findings would change the results of the State Board's actions on these petitions. It is enough that the findings made by the State Board are supported by a preponderance of the evidence and that they support its conclusions and decisions.

> "Although more complete findings by the State Board would have aided in the process of judicial review by making it easier to determine whether or not the Board's conclusions and decisions were supported by its findings, we conclude that the findings were adequate."

But, as we have heretofore observed, in the case before us on appeal there was testimony or evidence introduced as to several of the factors listed but no findings were made concerning those factors. Furthermore, although testimony relevant to certain factors was undisputed, there was disputed testimony and evidence introduced concerning some of the other factors. We cannot conclude, as we did in *Donnybrook*, that the findings of the Board are adequate.

On appeal from a decision of an administrative agency, we are to approve the decision of the agency unless we determine that, among other things, the decision is not in accordance with the law. Sec. 28-32-19(1), N.D.C.C. Because the Board has not made findings as required by statute, the decision is not in accordance with the law. We therefore reverse the judgment of the district court affirming the decision of the State Board and remand with instructions to enter an order remanding this matter to the State Board for the preparation of findings and conclusions adequate to meet the requirements of Section 15-27.-2-04(3), N.D.C.C. If the State Board believes it necessary to hold an additional hearing for the preparation of the findings and conclusions it may, on proper notice, do so. Otherwise the findings and conclusions may be prepared from the record of the hearing on February 25, 1985, without holding an additional hearing.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.